The Honorable, the Judges of the United States Court of Appeals for the Fourth Circuit. Oyez, oyez, oyez, all persons having any manner or form of business before the Honorable, the United States Court of Appeals for the Fourth Circuit are admonished to draw nigh and give their attention for the Court is now sitting. God save the United States and this Honorable Court. All right, be seated, please. All right, this morning, we're going to conduct a court with a full three judges. But Judge Diaz is going to join us on the television screen. You see him there. Good morning, Judge Diaz. Judge Diaz Good morning, Judge Bimar. So we'll hear the first case of United States v. Manley and Mr. Ballinger. We'll hear from you. Thank you, Your Honor. May it please the Court. I'm the Director of the Appellate Litigation Clinic at the University of Virginia School of Law, and it's my pleasure to introduce two law students who will be presenting argument for Mr. Manley. Jacob Smith will handle the opening argument, and Holly Chason will handle any rebuttal. Okay, thank you. We'll hear from Mr. Smith first. Thank you, Your Honor, and may it please the Court. The core question here is the one the Supreme Court reserved in Borden, whether extreme recklessness counts as a use of force against another. It does not. Mr. Manley's 924C convictions should be vacated for three reasons. First, extreme recklessness does not satisfy the 924C Force Clause. Second, the vicar offenses can be committed with extreme recklessness. And third, the Virginia predicates are relevant under this Court's recent decision in Simmons. Addressing the extreme recklessness issue, the Borden plurality drew a stark contrast between defendants who intended harm or knew that harm— Jumping ahead a little bit, let me just see if we agree on some ground rules. Under 924C, we're trying to define a crime of violence, right? Correct, Your Honor. In doing that, we use a categorical approach to look at the crimes of violence that are alluded to. In this case, with respect to the assault, that's set forth in a separate count, alleging assault under a Virginia statute. Isn't that right? Not quite, Your Honor. It's assault with a dangerous weapon under vicar, and— Well, it's a vicar violation, but the vicar violation is a violation of state or federal law, and it defines the state law. It actually gives the citation to the state assault. That's right, Your Honor. Okay. So, we don't look at the facts. We just look at what the allegations of these statutes say and determine whether they're crimes of violence. That's what we're looking at, right? Your argument, now to get to where you were beginning your argument, your argument is that some violation—I don't know if it's a vicar violation or the state violation—can create a violation with extreme recklessness. So, maybe you can begin there and tell me which statute you're addressing, and then we can go on from there. Certainly, Your Honor. To discuss the vicar offenses, it's pretty plain they can be committed with extreme recklessness. The government admits on page 30 of its brief that generic murder can be committed with extreme recklessness, and that aligns with what five circuits have held. Well, shouldn't we be looking at the text of the vicar to determine? It says whoever, for the purpose of obtaining money or the purpose of advancing himself, commits an assault. That's correct, Your Honor. If you're committing assault for the purpose of getting money or advancing your position, isn't that intentional? No, Your Honor, because while there's a purpose required, the criminal acts committed with that purpose could still be reckless. How is it if somebody says, I'm paying you $10 to go shoot the legs of my opponent, and you go there and shoot the legs of the opponent, and he gives you the $10? Can that be reckless? Not in that example, Your Honor. I'm trying to put in the purpose. It says for the purpose of achieving position, advancing your position in the enterprise or for money, right? Right, Your Honor. But there are cases where you can think of a getaway driver for a racketeering organization. He's acting for the purpose of maintaining his position in the organization, and in doing so, he drives very recklessly, he speeds, and he kills someone, and he's convicted of— He's not driving recklessly for the purpose of the enterprise. He's driving recklessly because he's within the enterprise. But here, the conduct of assault has to be committed for payment, or it has to be committed to advance your position, doesn't it? Your Honor, the conduct, the criminal conduct has to be committed for that purpose. But it doesn't necessarily follow that the result element has to be committed for that purpose. And the Second Circuit actually addressed this question directly in the 1999 case, United States v. Mapp, and they recognized that vicar felony murder was possible, and they took that same line of reasoning, that you look at the criminal conduct that's punished, and you don't necessarily— An element of the vicar violation is it has to be for money or to advance your position. Unless you have that, you're not violating. But let me take it a step further. The Virginia statute says you have to assault with the purpose of maim, personal injury, and all that. And we've held, in Rumley and other cases, that that's a violent crime. Your Honor, to respond to that, at first, we believe the Virginia offenses are means and elements of the vicar statutes that ultimately aren't relevant. But further, to address Rumley, that decision assumed that the mens rea was intent, but it didn't look at how Virginia courts interpreted the intent element. And the government has admitted that Virginia murder can be committed with extreme recklessness. And once that's admitted, it does follow that unlawful wounding in violation of 18.2-51 can be committed with the same mens rea. That's because Virginia courts have held that unlawful wounding is the same mental state element as voluntary manslaughter, and manslaughter is a lesser-included offense of murder. So, if murder can be committed with extreme recklessness, unlawful wounding certainly can as well. And Rumley did address the same crime. We admit that, and we admit that is a difficult issue, but it's clear in this circuit that an unchallenged and untested assumption is simply not one that controls future courts. That's what the court said in United States v. Norman. But to the issue of whether we are looking, let's talk here with assault with dangerous weapon on that aspect of the events, I think I understand you to say it's irrelevant that count, is that 25 or 35?  But it references count 24 in the indictment, and count 24, as Judge Niemeyer alluded to, specifies the Virginia statute. So, why wouldn't we look to the actual, using the modified categorical approach to figure out as much as we can about what offense to apply the charging documents, or what offense to apply a categorical approach to, why wouldn't we look to that? Your Honor, because the Vickers statute is indivisible on its face. The element is in violation of the laws of any state or the United States. It doesn't set out a list of alternatives, and under Supreme Court precedent in Mathis and into comp, that's where the modified categorical approach stops. If there's no list, it's indivisible. And this circuit recently addressed a directly analogous situation in Simmons. That's the RICO case? Yes, Your Honor. In that case, the court said RICO conspiracy is divisible into conspiracy and conspiracy aggravated by racketeering activity. But the racketeering activity element, that's not further divisible based on all the possible racketeering activities. And that was the case, even though in Simmons, there was a statute that set out all the possible racketeering activities. But to your point, and you laid this out at the beginning, I mean, it's arguable perhaps that some of these defense require intent or knowingly, you resist that, and I appreciate, yeah, I think your arguments there. But you concede that they require at least extreme negligence, correct? Yes, Your Honor. Has there been a circuit court, a court of appeals since Borden that has found extreme recklessness was not a crime of violence? No, Your Honor. All the circuit courts have addressed it have found that it was, correct? That's correct. To address that, where we believe with respect that the Ninth Circuit and the First Circuit went astray, is that they relied on the fact that an extremely reckless defendant is aware of potential victims. But that's true of ordinary recklessness, too. So it doesn't really distinguish the two. But they do, they make a difference. I mean, all the examples, and in fact, the Supreme Court, the Supreme Court, the Supreme Court, well, let's just talk about those cases. It seems to me they indicate that in the case of extreme recklessness, you're aware of, you know, potential victims in a much more concrete setting. In other words, there's people that are known to you. You may not, in the extreme recklessness, target person A, but you have a group of people who are visible, known, and which is different than, you know, the person I think that Justice Kagan talks about who is late for work, you know, goes through an intersection and hits someone that the driver doesn't see. So it seems like there's this question in the extreme recklessness conduct of, do you have to target a specific individual, or do you have to see, be aware of people that there's an extremely high likelihood will be either injured or killed? Your Honor, extreme recklessness requires heightened culpability, but it doesn't, it still doesn't require targeting particular persons. And driving offenses are a great example. For example, in United States versus Fleming, this court considered a defendant who drove at very high speeds, who was weaving in and out of traffic, he took a curve too fast, and he killed someone, and his conviction for secondary murder was upheld. That's a situation where the defendant certainly didn't intend to use force against anyone. He certainly didn't know it was practically certain that he would use force against someone or he would have stayed home. Do you think that's analogous where somebody did not intend to kill, but his extreme recklessness was in driving the vehicle? Do you think that's analogous to a circumstance where a person assaults for the purpose of money, receiving money, or for the purpose of achieving advancement in the enterprise? Yes, Your Honor. He actually assaults for that purpose. I don't see how that could be reckless. He set about to assault for the purpose of obtaining money or for the purpose of advancing himself in the enterprise. And those are elements of the Vicar statute. Your Honor, as in the example of someone who's driving for the purpose of... Now, I'm trying to point out that that analogy doesn't work because you're not driving for the purpose of killing somebody. You're driving to get away, and you're reckless while you drive and kill somebody. Here, you're assaulting somebody for the purpose of money. You're assaulting somebody for the purpose of advancing yourself. That's the allegation. Those are the elements right in the statute. He uses those words. That's correct, Your Honor. But Vicar incorporates the generic definition of murder. It does so without altering it in any way. But you are overlooking the for the purpose of. In other words, it doesn't take the whole range. It doesn't say necessarily reckless or negligent homicide. It says you're committing an assault to receive money or you're achieving it to advance purpose. I don't know how that could be more deliberate. Your Honor, the assumption seems to be that the purpose element has to map on to the result element of the generic crime. Exactly what the statute says. Anybody who assaults with a dangerous weapon for the purpose of gaining entrance or maintaining an increasing. Your Honor, these generic definitions, they come with their own mens rea. Murder has a very well established mens rea that includes. If somebody pays you to assault somebody and you assault them, you think that's reckless? No, Your Honor, but you can imagine situations where that person would receive consideration to do something reckless, and then that would end up resulting in assault or resulting in murder. I see my time is expiring, so. Counsel, before you sit down, I have a couple of questions. So I get your argument that you don't think that we should consider the Virginia enumerated offenses because you think they're means and not elements of the vicar offense. But assume for the moment that we don't agree with you, and Judge Niemeyer raised this point, and I think Judge Quattlebaum did as well. I mean, if we're looking at those offenses, specifically with respect to assault with a deadly weapon, you know, it's the three cases that you cite in your brief ultimately. Don't those cases look to circumstantial evidence of the behavior in question to make out the specific intent? And if in fact that's true, aren't the Virginia cases in fact consistent in requiring specific intent with respect to the assault offense? Your Honor, I see my time has expired. May I briefly answer? Your Honor, if you read the cases, you see that they do use the language of recklessness. And further, as I mentioned earlier, it's clear that unlawful wounding has a similar mental state to murder, which the government admits can be committed with extreme recklessness. We respectfully ask the Court to vacate Mr. Manley's 924C convictions and remand for resentencing. Thank you. Hold on. Don't sit down just yet. So with respect to the Virginia murder offense, let me ask you this. So do you agree with me that under Borden and under the statute with respect to 924C, what matters is the defendant's intent to use force and not necessarily cause death? Yes, Your Honor, because that's what the force clause asks for, if I understand your question correctly. Right. And so again, going back to the Virginia statute with respect to murder, because of course, you may have a valid argument with respect to generic murder, but ultimately, if we don't agree with you that the enumerated offenses in the VICAR statute are elements and not means, if you think they're elements, then we look to the particular statute and the way it's been interpreted by the highest court in the jurisdiction. And in Virginia, anyway, the Virginia Supreme Court has required the government to show willful or purposeful behavior rather than negligent behavior. In other words, that the defendant embarked upon a course of wrongful conduct that was likely to cause death or great bodily harm. So doesn't that map on neatly with Borden's requirement that what matters is the defendant's intent to use force, not necessarily cause death? No, Your Honor, and in respect, I think this is where the 11th Circuit may have gone astray in Alvarado-Linares. Intent to do something that's in some sense harmful or wrong is simply isn't the intent to use force against another that Borden requires. All right. Thank you. Thank you, Your Honor. All right. Thank you. Mr. Becker, Ms. Becker. Good morning. May it please the Court. Jacqueline Bechara for the United States. In both Irby and Bryant, this court cited the Supreme Court's approval in Johnson 1 of a definition of a violent felony as a crime characterized by extreme physical force such as murder, forcible rape, and assault and battery with a dangerous weapon. In this case, the defendant's 924C convictions are validly predicated on two violent crimes in aid of racketeering. I guess just to cut a little bit short, the argument that Mr. Smith is making is that Borden might have changed the landscape, but in any event, it's most recent, and it adds the mens rea requirement analysis. So you may be right in those statements, but it seems to me Borden's very relevant, isn't it? Of course. Your Honor, Borden simply maintains the status quo in this circuit. As the defendant acknowledged at page 10 of his reply brief, this court held as early as 2006 in Garcia v. Gonzalez that crimes that could be committed with ordinary recklessness do not satisfy the force clause. And so to credit the defendant's position would suggest that the court simply ignored its own precedent for 15 years before the Supreme Court handed down Borden. But we know that's not the case because there are cases where the court specifically decided that various offenses did not satisfy the force clause because they could be committed recklessly, such as the 2019 Simmons case or the concurrence in Middleton. There are other cases where the court analyzed the mens rea required at length in cases like Burns-Johnson and Townsend. And again, those all were decided before Borden. So this principle was necessarily operating in the court's crime of violence cases. Counsel, that's, I think, fair. But from my memory, Bryant and Irby don't discuss the mens rea issue. They're focused more on the force that is required to commit it. So that doesn't necessarily mean they're overruled, but it doesn't address this issue we have now of extreme recklessness to the extent that's the mens rea for some of these statutes. So what's your position with respect to extreme recklessness? We maintain that as every court of appeals that has addressed extreme recklessness as a mens rea, it continues to satisfy the force clause. Because as the ninth circuit, the en banc panel of the ninth circuit in Begay explained, extreme recklessness requires extreme indifference for the value of human life. And at least in the context of murder, the court, the ninth circuit adopted the first circuit's reasoning in Baez-Martinez, which is that the killing of another human being with malice of forethought is conduct that is necessarily oppositional. That's the key word from Borden. Because a defendant certainly must be aware that there are potential victims before he can act with indifference toward them. If I may. So let me just go a little further there or talk about that a bit more. So in some of the reckless driving examples that we were talking about with your colleague, there's an awareness of potential victims there. And Borden uses the language to target an individual. And so it seems to me the question, and you're right, all the other court of appeals that have addressed this have said it's satisfied by extreme recklessness. But is there actual targeting of an individual with extreme recklessness? Your Honor, I'd like to make sure that we can keep in mind, despite that targeting language, Borden made clear that there is, it is not only intentional specific intent crimes that will satisfy the fourth clause, right? We know because the plurality said that knowledge is enough and because the plurality carved out an exception for extreme recklessness. Indeed, the en banc panel of the ninth circuit in Begay actually held that Borden abrogated the ninth circuit's earlier precedent to the extent it suggested that only intent crimes satisfy the fourth clause. Now, I hear you. I mean, I think I understand that. But you still need to deal with that language. And it seems like it either means you have to have in your mind, I'm going to hurt or kill an individual, or it means you have to have an awareness of, you know, individuals that are highly likely to be hurt or killed. Right. So I would urge the court to consider a phrase that recurs throughout the plurality's opinion, which is that the against phrase in against the person of another introduces the conscious object of the force. And we maintain that in cases involving extreme recklessness, there is always a conscious object. Importantly, we can consider the driving examples that Justice Kagan offered in her opinion, which tease out this distinction very helpfully. As I believe Judge Quattlebaum flagged, the recklessness example was that someone who's just running late to work and doesn't see a person in their path, hits that person. That's ordinary recklessness. But let's say a getaway driver speeding away from the scene, sees someone in his path, right, that is a conscious object, plows forward anyway. And that is knowledge. And we believe that extreme recklessness is approaching knowledge. It's quite close to that because in the, even in the driving examples where courts have held, I'm sorry, have upheld a finding of malice, those all involve situations where the driver at least appreciated that there was someone in his path. It's not, it wasn't a mere accident. And, you know, going further in that portion of the opinion, Justice Kagan talks about the fault of the defendant being inattention, you know, and I take it your position is with extreme recklessness, we're not talking about just mere inattention. We're talking about, you know, wrongful conduct with people that you can, that you're aware of. Exactly, Your Honor, I'll bring us back to the decisions that we already have on this. Every court of appeals has emphasized that extreme recklessness requires indifference toward human life. That is necessarily oppositional. And there is a conscious object of that force. If I may, I would like to address a few points that my friend made. First, we maintain that this court's inquiry in this case is shaped by its decision in Keene, which held that a vicar conviction from the text of 1959 requires that a defendant's conduct constitute one of the enumerated federal offenses as well as a violation of the charged state crime. And so there are three relevant components when evaluating the minimum mens rea required for each of these vicar offenses. The elements of the federal enumerated offense, the elements of the charged state crime, and of course, vicar's purpose requirement. This court's decision in Simmons just simply doesn't bear on the inquiry here because the court was interpreting a different statute. That is 1962 RICO conspiracy. And in Simmons, the court explained that a RICO conspiracy offense is completed when two people reach an agreement to commit two or more racketeering acts. The racketeering acts identified in 1961-1, as my friend correctly observed, this court determined those are means, not elements, because it's irrelevant to the jury's determination whether the agreement was formed, what the underlying acts were. But here, this court made clear in Keene that a jury must find that the defendant engaged in the conduct alleged in the indictment. So there it was assaulting the named victim with a dangerous weapon in violation of the But is Keene really on point here? Because here we're talking about a crime of violence under 924. And Keene, as I recall, was about, you know, primarily whether you have to do the categorical approach, you know, in assessing the elements of the vicar offense. Maybe I'm trying to see how those two match up. It seems like we're in a different posture here. Your Honor, because Keene said that a jury must find both the conduct engaged constituted the federal offense and the charge violation of state law, there is no circumstance in which a defendant could be convicted of a vicar offense without the jury necessarily have founding that he completed the Virginia or here the Virginia state crimes charged in the indictment. If the court has no further questions as to murder, I'll turn just briefly to vicar assault with a dangerous weapon based on Virginia Code 18.2-51. As Your Honor's observed, this court already held in Romley that Virginia unlawful wounding statute satisfies ACCA's force clause because it requires not only the causation of bodily injury, but also the specific intent to maim, disfigure, disable, or kill. And contrary to my friend's position, Romley remains correct after Borden for at least three reasons. First, Romley express expressly discussed the mens rea required by the force clause, citing Leocal. Second, Romley relied on this court's previous decisions that had reached the same conclusion, including a case called Jenkins, which was orally argued, but resulted in an unpublished decision. And Jenkins discussed the mens rea required by that statute at length. And finally, this court applied Romley again after Borden had been decided in Moreno-Ostorio. Well, Counsel, what if, yeah, I appreciate your keen position and the need and your view that we need to focus on the Virginia statute. Assume just for a second, we also have to look at the federal assault with a dangerous weapon offense. What's your position as to how that's a crime of violence? Your Honor, we maintain that Bryant dictates that federal generic assault with a dangerous weapon is a crime of violence because the dangerous weapon element transforms even an ordinary assault offense into a crime of violence. And we know that that reasoning remains sound after Borden from cases like the Ninth Circuit's decision in Buck, which specifically joined Bryant and Knight, the Sixth Circuit case on which Bryant relied. And that was decided earlier this year after Borden. Finally, I'll renew just briefly our argument that these vicar crimes could not have been committed with a mens rea of ordinary recklessness because every vicar offense requires proof that the defendant engaged in conduct in the enumerated offenses either for consideration or to maintain or increase his position in the racketeering enterprise. Counsel, can I ask you a question about the hypothetical that Judge Quattlebaum mentioned that I think Judge Kagan spun out with respect to a motorist who is late for work and travels at a high rate of speed on a roadway. And you seem to indicate that that might not rise to the level of extreme recklessness sufficient to warrant a finding that that was a crime of violence. So in the Virginia statute, it's pretty clear that the statute on its face seems to require specific intent with respect to the assault offense. But your colleague on the other side points to three cases that, in his view, suggest that perhaps the Virginia courts interpret the statute as requiring something less than specific intent. And the one case in particular that I want you to talk about for a moment is the Knight case where the Virginia Court of Appeals found that an appellant who was traveling at a high rate of speed, at such a dangerous rate of speed, given his surroundings, that a rational fact finder could certainly infer that an appellant intended the immediate, direct, and necessary consequences of his voluntary acts. I suppose that finding of intent is sufficient to suggest that perhaps the court is being consistent. But how is that fact scenario different from the one that Judge Quattlebaum talked about? What makes it different? Your Honor, that case is significantly different. And we believe that satisfies Borden's formulation of a conscious object of the force. And that's because we know the court discussed at length the underlying facts. The defendant in that case was traveling at a rate of, I believe, 77 to 107 miles per hour. It was well over the speed limit in that zone, which was 35 miles per hour. He moved from the ongoing traffic lane and directed his car into the left turn lane where cars were sitting, waiting to turn. In other words, the drivers of those cars were conscious objects just sitting in the lane, waiting to turn into a shopping center. And moreover, there was testimony elucidated at the trial that the defendant was seen laughing as he turned his car into that lane. So from all of that, the court correctly concluded that the defendant had the specific intent to injure those victims sitting in their cars. That case was a sufficiency of the evidence case, wasn't it? As opposed to actually addressing the mens rea. That's correct, Your Honor. Thank you. Is there anything further? If the court has no further questions, we ask that you affirm. All right. Thank you very much. Holly Chasen. Thank you, Your Honors. A few points. Judge Niemeyer, if the purpose element of vicar applied separately to every element of the predicate offenses, then vicar murder would not encompass either depraved heart murder or felony murder. But the Second Circuit in the MAP case that my co-counsel cited held that vicar murder does include felony murder. And there's no reason to think that Congress meant to— I didn't quite understand your argument. The vicar says you have to either commit the murder or the assault for the purpose of receiving money or for advancing in the enterprise, advancing your position in the enterprise. Now, the question is, with those additional purposes laid on to the assault and the murder, how do you get rid of that? Our understanding is that it does not map onto each of those elements. It only applies to the conduct at issue, which is murder or assault. Well, sure. But it says the violation, and it says whoever, for the purpose of receiving money or for the purpose of advancing yourself, assaults or murders. So the question is, why doesn't that read on it? It's a direct grammatical modification of the murder and the assault, grammatically. Your Honor, we think that this Court's holding in Simmons that the RICO statute had those two indivisible elements is similar here. It's not that the purpose element doesn't map onto the conduct. It's that it only maps onto the conduct. So the conduct that you commit, murder, has to be done for the purpose of currying favor with your gang. But you can commit— But if you commit murder for the purpose of advancing your position in the enterprise, doesn't that mean you're setting out to do the murder? Right, but our contention— You have knowledge of it, and you're going to pursue that conduct with that purpose. Isn't that a mental state? Right. But, Your Honor, our contention is that if you are doing another action, such as driving extremely recklessly for the purpose of maintaining or increasing your position in the gang, that you could then commit murder recklessly. Except the murder is the object, not the driving the car. And your hypothetical takes the driving of the car as the reckless conduct. But my point is that regardless of how you define murder or assault, if the statute requires that you commit the murder or the assault—that's the conduct at issue, the murder or assault—for the purpose of receiving money or for the purpose of advancing your position, I don't understand how you satisfy—the government satisfies those two elements without proof of some kind of mental state. Your Honor, but we want to argue, like the Second Circuit did in the Mapp case, that Vicar is not—Congress did not intend Vicar to eliminate the possibility of being convicted of Vicar-depraved heart murder or felony murder, which are murders that can be committed recklessly. So our example of a gang member driving a car extremely recklessly for the purpose of impressing his gang buddies to maintain or increase his position in the racketeering enterprise, that would satisfy the Vicar—you are acting with that purpose. But then if he then kills someone accidentally because he is driving extremely recklessly, then he could be found guilty of Vicar felony murder. You're not committing the murder for the purpose of advancing. You're driving recklessly for the purpose of advancing. The question—the hypothetical just simply doesn't read on to the statute. The statute says you committed the murder for the purpose of receiving money. That's a fair point, Your Honor. I think our focus is that we're focused on the least culpable conduct. And we do believe because Vicar murder could be committed recklessly, that Mr. Manley's 924c conviction should be vacated here. And just— It would have to be extreme recklessness, wouldn't it? Correct. And Borden left that open? Yes, Your Honor, the Borden court did reserve that issue in footnote 4. And the courts of appeals that have addressed that issue since— Right. —concluded extreme recklessness is a crime of violence, right? Correct. Though we do believe the court, the Ninth Circuit in Begay and the First Circuit got that wrong, we— Well, let's assume they got it wrong. Right. Your Honor— What do we do after Borden? In other words, if we're facing the same issue those two courts faced— Yeah. —my guess is if Borden went away, we'd be creating a split. That doesn't mean we can't do it. You know, we hold our own counsel and try to do the right thing. But two other circuits, at least two, have addressed the issue. And we ought to at least look at them. But we have to accept your arguments and address it in this case. Why isn't extreme recklessness a violent crime? Because there is no meaningful distinction for the purpose of the force clause between ordinary recklessness and extreme recklessness. It certainly doesn't require the type of targeting that— It's just in a judgment that— I understand recklessness. The understanding that Borden talked about recklessness, it is the conduct in the face of risk. And the question is, how high is the risk? And when the risk gets so high, it gets close to deliberate. And extreme recklessness, Borden left it open, but I think these other courts thought that it was close to a mental state that we would call violent. Isn't that really where the recklessness standard is, is the addressing the degree of risk? Yes, Your Honor. The distinction between ordinary and extreme recklessness often does involve a higher culpability being assigned to extreme recklessness. But at the end of the day, extreme recklessness is still ordinary recklessness and what it requires. It only requires a conscious disregard of a substantial and unjustifiable risk. But the Virginia courts that go through that, the Essex case, the Watson-Scott case, one other one, I'm drawing a blank right now, but either— they tease that out and they use examples where, for example, shooting a gun in the shooting into a room. I mean, the latter being extreme because there's known individuals that the force was applied against, whereas in the Hunter-in-the-woods situation, there's not known individuals. It seems like that's more like Justice Kagan's example of a late-for-work driver who hit someone they did not see. All the examples in Virginia case law seem to talk about, you know, maybe you didn't say, I'm going to target Mr. Jones, but the awareness of individuals was so clear that it was almost certain that you would injure or kill one. Seems like that is the difference. And that, you know, is what the other circuits say, you know, gets us to a crime of violence. The difference between extreme recklessness and ordinary recklessness is more of an ad hoc moral culpability judgment. This court in Knight found extreme recklessness, and there Mr. Knight actually applied the brakes before he hit his victim. In this court in Fleming, the driver was driving extreme speeds, he was drunk, he weaved in and out into oncoming lanes of traffic and killed someone, and yet this court still only held that extreme recklessness was sufficient to satisfy second-degree murder there. We contend that because of this, extreme recklessness really only differs from ordinary recklessness in this ad hoc culpability judgment. And I see that my time has expired, so we would ask that this court vacate Mr. Manley's 924C convictions and remand for resentencing. Thank you. Thank you, counsel. I want to compliment both counsel for the balance. You argued like mature counsel. We expect you to be here several times in the future and look forward to your arguments. You did a fine job, and thank you for that. Our practice is to come down and greet counsel, as you know, and we're still observing protocols of COVID, and so we're not going to do that today, but we do extend our spiritual handshakes and thank you for your arguments. They're very helpful. And then proceed on to the next case. Thank you.
judges: Paul V. Niemeyer, Albert Diaz, A. Marvin Quattlebaum Jr.